IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01307-RBJ

TAMMY W. PARKS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision denying claimant Tammy Parks' application for Social Security disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons laid out below, the Court reverses and remands the Commissioner's decision.

**I. Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence

is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II. Facts

Ms. Parks lives in Colorado Springs, Colorado and has previously worked as a nurse's aide, certified medical technician, massage therapist, and sales clerk. She injured herself while working in a nursing home in 1993, but she continued to work for a number of years.

### A. Procedural History

On March 27, 2009, Ms. Parks filed a Title II application for benefits based on disability beginning on March 24, 2008. Four days later, she filed a Title XVI application for supplemental security income, again alleging disability beginning on March 24, 2008. Both claims were initially denied on May 28, 2009. The claimant then filed a request for a hearing, which was held on June 24, 2011 in front of Administrative Law Judge Richard J. Maddigan. During the hearing, Ms. Parks was represented by her attorney, Fred Newall. The ALJ denied the claimant's application for benefits on June 30, 2011, and the Commission denied her request for review on January 18, 2013. Ms. Parks filed a timely appeal in this Court.

### B. Medical History

The record contains evidence of Ms. Parks' degenerative disc disease (DDD) of the lumbar spine and her obesity. *See* R. at 24. Most relevant to the factual issues raised in this appeal is the evidence concerning Dr. Boatright's fibromyalgia diagnosis, the claimant's depression, and her daily activities.

Beginning with Dr. Boatright's diagnosis, the doctor reported that the claimant had 14 out of 18 trigger points (11 are required for a fibromyalgia diagnosis) and noted that "the patient's trigger point assessment is consistent with a diagnosis of fibromyalgia." R. at 391. Dr.

Boatright recommended "NSAIDs for acute pain" and commented that "[t]he patient would also benefit from light physical therapy and possible antidepressant medication. The patient should follow up with a pain specialist if the pain is persistent." R. at 391.

Turning to the claimant's depression, Dr. Valette's report lists "dysthymia," or long-term depression, as an Axis I diagnostic impression and notes that Ms. Parks reported that she has been depressed "all her life." R. at 403–04. According to Dr. Valette, Ms. Parks also stated that she had had a deep period of depression that lasted three to four days the week prior to the exam, and that medication "has never really helped." R. at 403. The claimant also told the doctor that she feels hopeless and worthless, cries frequently, is irritable, and sometimes stays in bed, but that she is not suicidal. R. at 403. Dr. Valette opined that the claimant's depression may "[have] gotten worse because of [her] pain." R. at 404.

The claimants' treatment records from Aspen Pointe reflect a provisional diagnosis of "major depressive disorder, recurrent, moderate" and note that Ms. Parks reported over five current depressive symptoms that have persisted for more than two weeks. R. at 515. The doctor found that her symptoms "have a clinically significant impact on her ability to function in her daily activities." R. at 515.

Lastly, the record contains evidence concerning Ms. Parks' daily activities. Dr. Boatright reported that the claimant "is able to get in and out of bed, dress herself and bathe herself. The patient is able to drive, cook and clean for herself." R. at 388. Dr. Valette's report states that Ms. Parks wakes her daughters up to go to school, but "her daughters help her with all of her chores," including laundry, grocery shopping, cooking, and sometimes dressing and bathing. R. at 403–04. The claimant also reported to Dr. Valette that "the last time she could do chores independently was two years ago. . . . She says she has some friends, but she does not see them

3

as much because of pain. She handles her money and bills. She has a driver's license and drives less because of pain." R. at 403–04.

### C. The ALJ's Opinion

The Social Security Administration uses a five-step process to determine whether a claimant qualifies for disability insurance benefits. The Administrative Law Judge assigned to this case, Richard J. Maddigan, determined that Ms. Parks met her step-one burden of showing that she had not engaged in substantial gainful activity since March 24, 2008, the alleged onset date. R. at 23. At step two, the ALJ found that Ms. Parks has the following severe impairments: degenerative disc disease (DDD) of the lumbar spine and obesity. R. at 24. At step three, the ALJ concluded that Ms. Parks does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. at 28. Next, the ALJ determined that the claimant has the residual functional capacity (RFC) to "perform sedentary work, as defined in 20 C.F.R. 404.1567(a) and 416.967(a), including the ability to sit, stand, or walk without limitation, except the claimant can lift 10 pounds frequently and 15 pounds occasionally, cannot crawl, and is limited to unskilled activities, with a limited need to concentrate on detailed or complex issues." R. at 28. At step four, the ALJ found that Ms. Parks is unable to perform any relevant past work. Finally, at step five, the ALJ concluded that, considering Ms. Parks' age (36 years old), education (at least a high school education), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. R. at 35. The ALJ thus concluded that Ms. Parks had not been under a disability.

### III. Discussion

The claimant appears to make the following arguments for why this Court should remand

the ALJ's decision: (1) The ALJ failed to consider Ms. Parks' obesity at step three, (2) similarly, the ALJ did not consider Ms. Parks' obesity in his RFC assessment, (3) the ALJ improperly rejected Dr. Boatright's fibromyalgia diagnosis, (4) the ALJ's RFC determination did not consider the combined impact of all of Ms. Parks' impairments, (5) the ALJ failed to consider the claimant's work history and motivation to work, (6) the ALJ's assessment of Ms. Parks' credibility is not supported by substantial evidence, (7) the ALJ's credibility analysis improperly considered Ms. Parks' daily activities, (8) the ALJ did not follow the applicable legal standards in analyzing the claimant's alleged pain, and (9) the ALJ's step-five analysis is flawed because the vocational expert ("VE") did not consider all of the claimant's impairments.[1] The Court will address each in turn.

### A. Consideration of Obesity at Step Three

At step three, the ALJ considered the claimant's DDD of the lumbar spine and found that she does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ did not, however, consider the claimant's obesity, which he had found to be a severe impairment at step two. *See* R. at 24, 28. The Musculoskeletal System section of the Listing of Impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, under which spinal impairments are considered, makes clear that

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of

---

[1] The claimant's brief is not a paradigm of organizational clarity. To the extent the claimant intends to make any argument not listed here, the Court considers it waived. See *Murrell v. Shalala*, 43 F .3d 1388, 1389 n.2 (10th Cir.1994) (holding that "a few scattered statements" in plaintiff's argument are merely "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review") (citing *Adams–Arapahoe Joint Sch. Dist. v. Continental Ins. Co.*, 891 F.2d 772, 776 (10th Cir.1989) (issue not formally designated is waived; mere mention in context of another matter is not enough)). On a different note, claimant's counsel is reminded to include a page number and information about the reporter in short-form citations; citations such as "Talbot, supra" are not in an appropriate form.

> obesity with musculoskeletal impairments can be greater than the effects of each
> of the impairments considered separately.  Therefore, when determining whether
> an individual with obesity has a listing-level impairment or combination of
> impairments . . . adjudicators must consider any additional and cumulative effects
> of obesity.

*See also Branch v. Astrue*, No. C 07-05530 SI, 2008 WL 3184490, at *4 (N.D. Cal. Aug. 4, 2008) (on similar facts, finding statement that "the objective medical evidence does not suggest that the cumulative effects of obesity meet the criteria set forth [in the listing]" insufficient and grounds for remand).  In this context, "[a] failure to consider the impact of obesity can constitute reversible error."  *Cody v. Astrue*, No. 09-3060, 2010 WL 3951987, at *8 (C.D. Ill. Oct. 6, 2010) *amended in part*, No. 09-3060, 2010 WL 4876734 (C.D. Ill. Nov. 17, 2010).  Because the ALJ did not consider the combined effects of the claimant's DDD and obesity, he did not follow the applicable legal standard.

Although this error is likely harmless in light of the ALJ's findings at steps four and five, the Court remands the decision on other grounds explained below, and thus a harmless error analysis is not necessary here.  On remand, the ALJ should expressly consider the claimant's DDD of the lumbar spine in combination with her obesity at step three.

### B. Consideration of Obesity in the RFC Determination

The claimant also argues that the ALJ failed to consider her obesity in his RFC assessment. ECF No. 12 at 10.  Specifically, the claimant points to the ALJ's step-two finding that "the claimant's obesity exacerbates her back impairment, and limits her ability to perform routine movement and necessary physical activity within a work environment." ECF No. 12 at 10 (quoting R. at 24).  She argues that this conclusion is inconsistent with the ALJ's RFC determination, in which he found that the claimant can "sit, stand, or walk without limitation." ECF No. 12 at 10 (citing R. at 28).  However, the Court notes that this finding is part of the

larger determination that Ms. Parks can perform sedentary work. *See* R. at 28.  Under 20 C.F.R. § 404.1567(a), "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  Given this context, it is clear that a sedentary job would not require routine movement or physical activity to any significant extent.  Thus the Court is satisfied that the ALJ's step-two finding does not undermine his RFC assessment.

Furthermore, the ALJ did explicitly consider Ms. Parks' obesity in the RFC analysis: "[T]he undersigned concludes that the evidence of degenerative changes to the claimant's lumbar spine, *coupled with her obesity*, would reasonably restrict the claimant to a range of work at the light level of exertion." R. at 34 (emphasis added).  Although this mention of the claimant's obesity is brief, the Court's general practice "is to take a lower tribunal at its word when it declares that it has considered a matter." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).  The Court sees no reason to depart from this principle here and accordingly finds that the ALJ's consideration of the claimant's obesity in the RFC assessment complies with the applicable legal standards.  The Court therefore declines to remand the decision on this basis.

### C. Dr. Boatright's Fibromyalgia Diagnosis

Next, Ms. Parks contends that the ALJ improperly rejected Dr. Boatright's fibromyalgia diagnosis. ECF No. 12 at 11–12.  An ALJ may not substitute his own medical judgment for that of a physician. *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) (citing *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir.1987) (an ALJ "can not interpose his own 'medical expertise' over that of a physician")). *See also Miranda v. Barnhart*, 205 F. App'x 638, 641 (10th Cir. 2005) ("The ALJ's approach impermissibly put him in the position of judging a medical

professional on the assessment of medical data."). In *Winfrey*, the Tenth Circuit held that the ALJ had "overstepped his bounds" when he rejected a physician's opinion because he did not believe that a particular test was an adequate basis on which to make a diagnosis. 92 F.3d at 1022. No other medical opinion had questioned the physician's reliance on the test, and thus the ALJ had no basis for doing so. *Id.*

The ALJ made an essentially identical error here. Dr. Boatright, a consultative examiner, reported that "the patient's trigger point assessment is consistent with a diagnosis of fibromyalgia" and recommended associated treatment. R. at 391. However, in his step-two analysis of the claimant's impairments, the ALJ noted that

> [w]hile the consultative examiner, Dr. Boatright[,] did find that the claimant had a score of 14 out of 18 on a trigger point assessment, and found that this assessment was consistent with a diagnosis of fibromyalgia, he failed to specify what those positive trigger points were, whether there were any control points, and what quadrants of the body were affected, and did not give a definitive diagnosis for this condition. Since the record does not provide the appropriate clinical findings, and the record clearly reflects that the claimant exaggerated her symptoms, it does not support fibromyalgia as a medically determinable impairment.

R. at 25. The ALJ based this analysis of the shortcomings of Dr. Boatright's diagnosis on the American College of Rheumatology guidelines, which require that a patient display widespread pain in all four quadrants of the body and have at least 11 of 18 trigger points. R. at 24–25. Although Dr. Boatright's report did not specify which quadrants of the body were affected, the doctor stated that the trigger point assessment was consistent with a diagnosis of fibromyalgia.[2] R. at 391. The ALJ was not permitted to reject this conclusion based on his own assessment of the medical evidence.[3] *See Miranda*, 205 F. App'x at 641. *See also Robinson v. Barnhart*, 366

---

[2] Although the ALJ found it significant that Dr. Boatright reported that the patient's symptoms "were consistent with a diagnosis of fibromyalgia," as opposed to stating in a more direct fashion that she has fibromyalgia, the Court does not find this distinction particularly meaningful. Furthermore, Dr. Boatright recommended treatment in the same paragraph of his report, seemingly confirming that Ms. Parks suffers from the impairment. *See* R. at 391.

[3] Indeed, given the highly subjective nature of fibromyalgia, "the Tenth Circuit has made clear that it is improper to reject findings as to fibromyalgia based on the fact that they are not established by formal clinical signs or laboratory

F.3d 1078, 1082 (10th Cir. 2004) ("an ALJ . . . may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."). Thus the ALJ did not follow the applicable legal standards in rejecting Dr. Boatright's fibromyalgia diagnosis.

Although this error is likely harmless in light of Dr. Boatright's functional assessment, the Court remands the decision on other grounds and thus does not engage in a harmless error analysis here. The ALJ should take another look at Dr. Boatright's fibromyalgia diagnosis on remand.

### D. The Combined Impact of All of Ms. Parks' Impairments

The claimant also argues that the ALJ failed to consider a number of Ms. Parks' other impairments—and their combined impact—in the RFC determination. Specifically, she contends that the ALJ did not consider her (1) cervical DDD, (2) disabling pain, neck and shoulder pain, and LUE pain and tingling, (3) decreased ROM in the cervical spine, (4) lumbago, (5) osteoarthritis, (6) thoracic DDD, (7) migraine headaches, and (8) depression.[4] *See* ECF No. 12 at 10–12. The law is clear that, in making an RFC assessment, an ALJ must consider even non-severe impairments. *See* 20 C.F.R. § 404.1545(e). Furthermore, "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96–8p.

As an initial matter, the Court notes that the ALJ did in fact consider the claimant's severe pain, although he did not specifically mention neck and shoulder pain or LUE pain and

---

tests." *Oor v. Astrue*, No. CIVA 07-CV-00883-WYD, 2008 WL 4371940, at *3 (D. Colo. Sept. 23, 2008).
[4] In response, the government argues that any error in not recognizing an impairment as severe is harmless because the ALJ's analysis did not end at step two. ECF No. 13 at 16. However, this point is non-responsive to the charge that the ALJ did not consider Ms. Parks' non-severe impairments in the RFC determination, as required by 20 C.F.R. § 404.1545(e).

tingling.  *See* R. at 29.  It is not clear that the ALJ considered the remaining impairments: cervical DDD; neck and shoulder pain and LUE pain and tingling; decreased ROM in the cervical spine; lumbago; osteoarthritis; thoracic DDD; migraine headaches; and depression.

However, in cases where the claimant was represented by counsel at the administrative hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (internal citations and quotations omitted).  In the present case, the claimant's attorney did not mention any of the remaining impairments listed above, except Ms. Parks' depression, at the hearing before the ALJ.  *See* R. at 46–63.  Furthermore, the ALJ relied on Dr. Boatright's functional assessment, which did not reflect limitations from any of the impairments listed above, for the hypothetical presented to the vocational expert.  R. at 62.  When the ALJ asked the claimant's attorney if there was anything else that he needed to consider in the hypothetical, the attorney replied that he might "get something from the treating psychologist or something, but otherwise no."  R. at 62.

Under these circumstances, the Court cannot fault the ALJ if he did not consider this list of impairments (excluding depression).  The claimant appears to have combed through the record in an attempt to find any hint of additional impairments that might undermine the ALJ's RFC assessment; the Court will not validate such an approach.  *See Turner v. Astrue*, No. 1:10-CV-115-SA, 2011 WL 2788405, at *8 (D. Utah July 13, 2011) ("To remand this case under these circumstances would be to reward claimants who omit discussion of their alleged impairments at the administrative hearing and thereby inject alleged error into the administrative decision, providing claimants inappropriate incentives.") (citing *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009)).

As for the claimant's depression, the ALJ undertook a thorough analysis of Ms. Parks' mental impairments at step two, *see* R. at 25–27, but did not discuss any mental impairments in the RFC determination, *see* R. at 28–35.[5] Although "[an] ALJ's failure to conduct a . . . particularized assessment of mental functions at step four [is] harmless error [when there] is no substantial evidence that would allow a reasonable administrative factfinder to include any mental limitations in [the] RFC," *Alvey v. Colvin*, 536 F. App'x 792, 795 (10th Cir. 2013), the Court finds that substantial evidence of Ms. Parks' depression exists here. Dr. Valette's report lists "dysthymia" as an Axis I diagnostic impression and notes that Ms. Parks reported that she has been depressed "all her life." R. at 403–04. The opinion also states that the claimant's depression may "[have] gotten worse because of [her] pain." R. at 404. Additionally, the claimants' treatment records from Aspen Pointe reflect a provisional diagnosis of "major depressive disorder, recurrent, moderate" and state that her symptoms "have a clinically significant impact on her ability to function in her daily activities." R. at 515. This evidence, coupled with the fact that the ALJ did not discuss Ms. Parks' mental impairments at all in the RFC assessment, requires the Court to remand the decision on this basis.

### E. The Claimant's Work History and Motivation to Work

Next, the claimant contends that the ALJ failed to consider her work history and motivation to work in his evaluation of her credibility and in his RFC assessment. ECF No. 12 at

---

[5] The ALJ did state in his step-two analysis that the RFC determination "reflects the degree of limitation the undersigned has found in the 'Paragraph B' mental function analysis." R. at 27. However, such conclusory language does not amount to a discussion of the claimant's mental impairments in the RFC analysis. *See Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013). Although the ALJ's opinion notes that the RFC assessment requires a more detailed analysis than the step-two severity determination, there is no indication that the ALJ performed that required analysis. *See* R. at 27, 28–35. As a district court in Kansas faced with the same boilerplate language put it, "[d]espite this boilerplate in the ALJ's decision, the court cannot find anything in the ALJ's decision at step four showing that he actually engaged in any analysis of mental functions and how they may be impacted (or not) by [the claimant's] medically determinable mental impairments." *Stookey v. Colvin*, No. 13-2172-SAC, 2014 WL 3611666, at *4 (D. Kan. July 22, 2014) (internal citations and quotations omitted).

11

12. The Court finds no error in the ALJ's analysis.

Beginning with Ms. Parks' credibility, the ALJ was required to base his conclusions "on a consideration of all of the evidence in the case record," including the claimant's "prior work record and efforts to work." SSR 96-7p. In his analysis, the ALJ noted that "the claimant procured and worked a job as a cashier beginning around the time of her alleged disability onset date, with no clear evidence that the claimant's impairment resulted in the claimant stopping said job one year later in 2009." R. at 32. The ALJ also noted that the claimant had applied for unemployment benefits, concluding that she must have believed she was capable of working to file the application. R. at 32. Thus the ALJ did consider her prior employment to some extent; furthermore, the opinion contains a detailed discussion of the reasons underlying the ALJ's credibility determination. *See* R. at 32–33. Tenth Circuit case law "does not require a formalistic factor-by-factor recitation of the evidence" in this context. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Indeed, the ALJ need only "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." *Id.* Here, the ALJ's opinion satisfies this standard, and the Court finds that the ALJ followed the applicable law.[6]

Similarly in the RFC analysis, the ALJ was required to base his assessment on all of the relevant evidence in the case record, including "[e]vidence from attempts to work." SSR 96-8p. As noted above, the ALJ found that Ms. Parks worked as a cashier around the time of her alleged disability onset date, "with no clear evidence that the claimant's impairment resulted in the

---

[6] The claimant argues that the ALJ should have looked at Ms. Parks' work record "in a positive light," ECF No. 12 at 13, but cites no authority to suggest that the law requires such an interpretation of the evidence. To the extent the claimant attempts to make a sufficiency of the evidence argument, it fails because "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Moreover, "[c]redibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

claimant stopping said job," and he considered her application for unemployment benefits. R. at 32. Thus he considered evidence from her attempts to work, satisfying the applicable legal standard. The Court sees no basis for remand in the ALJ's discussion of claimant's work history and motivation to work.

### F. Ms. Parks' Credibility

The claimant also challenges the ALJ's findings about her credibility generally, arguing that "the findings of exaggeration are questionable." ECF No. 12 at 13. This appears to be an argument that the ALJ's credibility determination is not supported by substantial evidence. The claimant's brief, however, does little more than invite the Court to reweigh the evidence. *See id.* at 13–15. Under Tenth Circuit law, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Furthermore, "[c]redibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

The Court is satisfied that the ALJ's credibility determination is supported by substantial evidence. The ALJ noted that, despite claiming extreme limitations, Ms. Parks has been treated in a conservative manner and has in fact failed to follow through with recommended courses of treatment. R. at 32. Additionally, the claimant was able to perform part-time work as a cashier during part of the period for which she claims she was disabled, and, following that job, she applied for unemployment benefits, thus indicating that she was capable of working. R. at 32. Ms. Parks also claimed on multiple occasions that she had been diagnosed with conditions for which no medical records existed. R. at 32–33. Finally, as discussed below, the claimant's daily

activities undermined her claims about the extent of her limitations. R. at 33. Given the evidence that the ALJ's opinion cites in support of the credibility determination, the Court is satisfied that the ALJ's findings are supported by substantial evidence.

### G. The Claimant's Daily Activities

The claimant's brief also argues that the ALJ improperly relied on Ms. Parks' performance of daily activities, which were merely "incidental," in assessing her credibility. ECF No. 12 at 15. The Tenth Circuit has held that the sporadic performance of daily activities does not constitute substantial evidence undermining a claimant's credibility. *See Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987) (discussing activities such as performing a few household chores, working for an hour or so as a janitor, and jogging). However, the portion of the ALJ's opinion at issue here cites Ms. Parks' reported abilities to get out of bed, dress and bathe herself, drive, cook, clean, help her daughters get ready for school, do laundry, grocery shop, maintain friends, and handle money. *See* ECF No. 12 at 15–16 (citing R. at 33). The ALJ also noted that Ms. Parks maintains her household, including caring for her two daughters, by herself at least part of the time. R. at 33. Considered together, these activities are not sporadic, but rather paint a picture of a fairly active lifestyle. Thus the Court concludes that the ALJ properly applied the applicable law.

Furthermore, the ALJ's conclusion that Ms. Parks' daily activities undermine her credibility is supported by substantial evidence. In his analysis of the claimant's credibility, the ALJ relied on Dr. Boatright's representation that Ms. Parks "is able to get in and out of bed, dress herself and bathe herself. The patient is able to drive, cook and clean for herself." R. at 388. He also cited to Dr. Valette's report, which stated that the claimant

> wakes [her daughters] up to go to school. She says her daughters help her with all
> of her chores. She says she needs help with laundry, grocery shopping, cooking,

> sometimes dressing and bathing. . . . She said the last time she could do chores
> independently was two years ago. . . . She says she has some friends, but she does
> not see them as much because of pain. She handles her money and bills. She has
> a driver's license and drives less because of pain.

R. at 403–04. Although the ALJ's summary of this evidence somewhat exaggerates the extent to which Dr. Valette reported that Ms. Parks could perform daily activities, *see* R. at 33, the Court nonetheless finds that his conclusion was supported by substantial evidence, particularly in light of Dr. Boatright's report. *See Wall*, 561 F.3d at 1052 (substantial evidence requires "more than a scintilla, but less than a preponderance"). The Court is satisfied that Dr. Boatright's opinion and, to some extent, that of Dr. Valette provide a sufficient basis for the ALJ's conclusion. Thus the Court declines to remand the decision on this basis.[7]

### H. The Claimant's Alleged Pain

Ms. Parks next argues that the ALJ did not follow the applicable legal standard in evaluating her alleged pain. ECF No. 12 at 17–18. Under Tenth Circuit case law, an ALJ must follow a three-step process when assessing subjective complaints of pain:

> A disability claimant's complaints of disabling pain are evaluated using the three-
> step analysis set out in *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987). Under
> *Luna* an ALJ faced with a claim of disabling pain is required to consider and
> determine (1) whether the claimant established a pain-producing impairment by
> objective medical evidence; (2) if so, whether the impairment is reasonably
> expected to produce some pain of the sort alleged (what we term a "loose nexus");
> and (3) if so, whether, considering all the evidence, both objective and subjective,
> the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012). In the present case, the ALJ found that the claimant had pain-producing impairments which could reasonably be expected to cause the alleged symptoms, thus satisfying the first two steps of the *Luna* analysis. *See* R. at 29.

---

[7] The claimant's brief cites to other evidence in the record that conflicts with the ALJ's conclusion. However, this evidence does not overwhelm the evidence that the ALJ cited in support of his conclusion, and thus it does not require the Court to find that the ALJ's conclusion was not supported by substantial evidence. *See Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (a decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record").

He went on to find that "the claimant's statements concerning the intensity, persistence, and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above RFC assessment." R. at 29. The ALJ reviewed numerous pieces of evidence in reaching this conclusion, including both objective and subjective evidence. *See* R. at 29–34. Thus the Court is satisfied that the ALJ's analysis follows the approach laid out in *Luna*.[8]

### I. The VE's Consideration of Ms. Parks' Impairments

Finally, the claimant argues that the hypothetical presented to the VE did not capture all of the claimant's limitations because of errors in the ALJ's RFC and credibility determinations. ECF No. 12 at 19. The ALJ's hypothetical inquiry to the vocational expert "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). As the Court found above, the ALJ failed to consider the claimant's depression in the RFC analysis; thus, any additional limitation that may be included after considering the claimant's mental impairments must be reflected in the hypothetical presented to the VE. Additionally, any further limitation that the ALJ finds after properly considering Dr. Boatright's fibromyalgia diagnosis must also be included. Beyond these two issues, the Court found no additional errors in the ALJ's RFC analysis; the Court also concluded that the ALJ properly assessed the claimant's credibility. For these reasons, the ALJ's reliance on the VE's testimony was otherwise proper.

### IV. Conclusion

The ALJ's decision is reversed and remanded for further proceedings based on the

---

[8] The claimant appears to argue that the ALJ did not consider all of her alleged symptoms in this analysis. *See* ECF No. 12 at 17–18. Although the discussion in her brief does not distinguish between symptoms and impairments, the symptoms it mentions are back and neck pain; leg pain; difficulty standing, walking, and sitting; and the need to lie down to relieve pain. *See id.* The ALJ mentioned all of these in his summary of the claimant's alleged symptoms, R. at 29, and thus the Court finds no basis for error here. Furthermore, the Court cannot discern any other clear argument in this section of the claimant's brief. *See* ECF No. 12 at 17–18. To the extent the claimant intends to make one, the Court considers it waived. See *Murrell*, 43 F .3d at 1389 n.2.

written decision's failure expressly to consider the claimant's obesity at step three, its analysis of Dr. Boatright's fibromyalgia diagnosis, and its failure to discuss the claimant's mental impairments in the RFC assessment. It is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied. Therefore, the Court declines to award benefits at this time. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

DATED this 9th day of March, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge